IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFREDO MARTINEZ, JR.,

  Plaintiff,

vs.                 No. CIV 99-0164 JC/LFG (ACE)

WILLIAM S. COHEN,

  Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant's Motion for Partial Summary Judgment, filed September 11, 2000 *(Doc. 57)*, and Plaintiff's Motion for Partial Summary Judgment, filed September 11, 2000 *(Doc. 60)*. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Defendant's motion will be granted in part and denied in part. The Court further finds that Plaintiff's motion will be denied.

**I.**  **Background**

Plaintiff Alfredo Martinez, Jr., was employed as a GS-12 Computer Specialist by the Defense Special Weapons Agency ("DSWA"), a branch of the Department of Defense ("DOD"), at Kirtland Air Force Base in New Mexico. Plaintiff was assigned to the Nuclear Management Information Migration Project ("NUMIS-M"), an assignment involving the migration of nuclear stockpile data from a mainframe computer to a client server.

On March 12, 1997, an anonymous caller lodged a complaint with the DOD Inspector General Hotline accusing Plaintiff, Mary Garcia (Plaintiff's supervisor), and Gary Clark of

misrepresenting their time and attendance records.  Col. Michael Callaway directed Col. John Crandley, Inspector General for Field Command DSWA, to conduct an investigation ("the Crandley Investigation") into the matter.

Plaintiff was concerned that the initiation of the Crandley Investigation would be used to discriminate against him.  Plaintiff and Ms. Garcia met with EEO Counselor Bettie Spencer in May of 1997 to discuss their suspicions of discrimination.  *See* Exhibit 2, Affidavit of Mary J.C. Garcia at 6, ¶ 12, attached to Plaintiff's Reply to Defendant's Response to His Motion for Partial Summary Judgment ("Pl.'s Reply"), filed November 3, 2000 *(Doc. 71)*.  Ms. Spencer allegedly assured them that she would discuss the complaints with the appropriate supervisors.  *See id.*  However, Plaintiff and Ms. Garcia decided to raise the issue with their supervisor, Col. Frank Prewitt, Director of the Nuclear Stockpile Logistics, DSWA Field Command.  Ms. Garcia claims that during her meeting with Col. Prewitt, she informed him about the meeting with Ms. Spencer and her concerns of discrimination.  *See id.* at 7, ¶ 13.  Plaintiff also claims that he met with Col. Prewitt on June 9, 1997, and notified him that his civil rights were being violated.  *See* Memorandum Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Memo. in Support") at 8, ¶ 14, filed September 11, 2000 *(Doc. 61)*.  Nevertheless, the Crandley Investigation proceeded.

Col. Crandley met with Col. Prewitt in July of 1997 to discuss the results of his investigation.  Col. Crandley allegedly found evidence to substantiate the charges of time and attendance abuse.  *See* Def.'s Memo. in Support at 4.  In addition, Col. Crandley claims that several employees informed him that Plaintiff and Ms. Garcia threatened to retaliate against them for offering information in connection with the investigation.  *See id.*

Based on the results of the Crandley Investigation, Col. Prewitt initiated his own time and attendance records investigation ("the Prewitt Investigation") on August 8, 1997. On this same day, Col. Prewitt appointed Commander Gerald Brenner to serve as Chief of the Stockpile Control Division, thereby replacing Ms. Garcia. Since Ms. Garcia was Plaintiff's supervisor, this appointment effectively removed Plaintiff from the NUMIS-M project, changed his job duties, and suspended his security access. *See* Pl.'s Memo. in Support at 10.

On August 11, 1997, Plaintiff submitted a Request for Sick Leave for the period of August 18, 1997, through November 7, 1997. Plaintiff claims that he took this action because he was told by his supervisor that he should be prepared to take leave. *See* Amended Complaint at 10, ¶ 33, filed February 28, 2000 *(Doc. 42)*. In contrast, Defendant maintains that Plaintiff requested leave because he was not feeling well and his doctor recommended that he undergo diagnostic testing for cancer. *See* Df.'s Memo. in Support at 7, ¶ 18. Col. Prewitt approved Plaintiff's request for sick leave.

Col. Prewitt then concluded his investigation and determined that Plaintiff was paid for overtime not worked. On August 18, 1997, Col. Prewitt signed a Notice of Proposed Suspension informing Plaintiff that Defendant intended to suspend him for fourteen days. Plaintiff was allowed to respond to the proposed suspension and admitted to being paid for overtime hours not worked. *See* Deposition of Alfredo Martinez, Jr. at 75, attached to Df.'s Memo. in Support. However, Plaintiff argues that he should have been allowed to amend his time and attendance records because Defendant routinely allowed employees to correct such errors. *See* Exhibit 11, Responses to Plaintiff's First Requests for Admissions, No. 47, attached to Pl.'s Memo. in Support. Two days after his proposed suspension, Plaintiff again sought discrimination

3

counseling from Chief EEO Counselor Bettie Spencer.  *See* Exhibit 7 at 2, attached to Pl.'s Memo. in Support.

Around September 9, 1997, Lt. Col. Larry Wrinkle instituted another investigation ("the Wrinkle Investigation") into alleged actions by Plaintiff.  *See* Pl's Memo. in Support at 11.  The Wrinkle Investigation focused on complaints from employees that Plaintiff and Ms. Garcia threatened to retaliate against them for offering information in connection with the Crandley Investigation.  While this investigation was pending, Plaintiff decided to submit his application for Voluntary Separation Incentive Pay ("VSIP") on October 1, 1997.  VSIP was a plan that offered separation incentives to employees eligible for retirement.  Col. Prewitt recommended approval of Plaintiff's VSIP application.  *See* Df.'s Memo. in Support at 8, ¶ 24.  However, Defendant's Resource Management Committee ("RMC") also had to approve Plaintiff's VSIP application.

The Wrinkle Investigation was completed by November 3, 1997.  Lt. Col. Wrinkle submitted his report and concluded that the allegations of retaliatory conduct by Plaintiff and Ms. Garcia were true.  *See* Pl.'s Memo. in Support at 11-12.  He also recommenced a downward adjustment of grade prior to retirement for both employees.  *See id.*  Consequently, Field Command asked Headquarters to conduct another "in-depth" investigation into the matter.  *See* Df.'s Memo. in Support at 9.

On November 14, 1997, Col. Prewitt issued a Notice of Decision to Suspend Plaintiff for 14 calendar days without pay, commencing November 17.  Three days later, Plaintiff learned that he had cancer.

On November 19, 1997, the RMC received the results from the Wrinkle Investigation. Defendant contends that the RMC previously decided that adverse personnel actions pending

4

against VSIP applicants must be concluded on or before December 3, 1997.  Since Plaintiff was subject to another "in-depth" investigation, the RMC denied Plaintiff's application because the adverse personnel action would not be resolved by the December 3 deadline.  *See* Df.'s Memo. in Support at 9.  Defendant further claims that the denial was based upon the seriousness of the charges against Plaintiff.  *See id.*  Out of thirty employees who applied for VSIP, three were undergoing investigation or had pending adverse actions against them (Plaintiff, Mary Garcia, and Gary Rear).  Gary Rear served his suspension prior to December 3, so the RMC approved his VSIP application.

Plaintiff retired from federal service on January 3, 1998.

## II. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  When applying this standard, a court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Martin v. Kansas*, 190 F.3d 1120, 1129 (10th Cir.1999).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Martin*, 190 F.3d at 1129 (citation omitted).  When the parties file cross motions for summary judgment, "we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997);  *see also Buell Cabinet Co. v.*

5

*Sudduth*, 608 F.2d 431, 433 (10th Cir.1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## III. Analysis

### A. Retaliation and Discrimination Claims

#### 1. Prima Facie Case of Retaliation

Defendant claims that he is entitled to summary judgment because Plaintiff has failed to establish a prima facie case of retaliation. *See* Defendant's Memorandum in Support of Motion for Partial Summary Judgment ("Df.'s Memo. in Support of Motion") at 12, filed September 11, 2000 *(Doc. 58)*. In order to establish a prima facie case of retaliation, Plaintiff must show: (1) he "engaged in a protected activity; (2) [he] was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) a causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999).

Defendant first argues that certain alleged retaliatory acts do not constitute adverse employment actions for purposes of the prima facie case. *See* Df.'s Memo. in Support at 12. The Tenth Circuit liberally construes the phrase "adverse employment action." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir.1998). Actions having an adverse impact on future employment opportunities may constitute adverse employment actions for purposes of retaliation claims. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996). "Such actions are not simply limited to monetary losses in the form of wages or benefits." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir.1998). Nevertheless, a mere inconvenience or alteration of job responsibilities will not be considered an adverse employment action. *See id.*; *see*

6

*also Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993).

Defendant maintains that Plaintiff is complaining of four adverse employment actions: (1) a meeting on July 8, 1997, designed to intimidate Plaintiff; (2) comments by Col. Prewitt on August 6, 1997, which informed Plaintiff that he should prepared to take leave; (3) Plaintiff's fourteen-day suspension in November of 1997; and (4) the denial of Plaintiff's VSIP application. *See* Df.'s Memo. in Support at 10. Defendant goes on to argue that actions (1) and (2) are not adverse employment actions. However, Plaintiff maintains that his loss of security clearance, loss of work space, and change in job function constitute the requisite adverse employment actions. *See* Plaintiff's Response to Defendant's Motion for Partial Summary Judgment ("Plaintiff's Response") at 13-14, filed October 2, 2000 *(Doc. 63)*.

Defendant is correct that the July 8 meeting and August 6 comments by Col. Prewitt, standing alone, do not constitute adverse employment actions. Independently, these actions did not result in a change of Plaintiff's employment status. However, these actions are relevant because they describe a course of conduct which eventually led to adverse employment actions. Here, the Court finds that Plaintiff alleges the following adverse employment actions which give rise to his retaliation claims: (1) Plaintiff's removal from the NUMIS-M project in August of 1997, which led to a change in his supervisory responsibilities, security clearance, and work space; (2) Plaintiff's 14-day suspension in November of 1997; and (3) Defendant's denial of Plaintiff's VSIP application in November of 1997.

Defendant next argues that Plaintiff's retaliation claims are not actionable because the adverse employment actions arose prior to the date Plaintiff first sought EEO counseling on August 20, 1997. *See* Df.'s Memo. in Support at 12. Therefore, Defendant maintains that

7

Plaintiff cannot show that he was subjected to adverse employment actions subsequent to or contemporaneous with the protected activities.  *See Anderson*, 181 F.3d at 1178.

A plaintiff is engaged in protected activity when he brings the charges of discrimination; it is not necessarily serving an employer with a formal lawsuit or receiving an employee's Equal Employment Opportunity Commission complaint.  *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir.1994); *see also Amir v. St. Louis University*, 184 F.3d 1017, 1025 (8th Cir.1999) (recognizing plaintiff's protected activity consisted of filing a grievance and a lawsuit against the university).  Plaintiff first brought charges of discrimination when he met with EEO Counselor Bettie Spencer in May of 1997 to discuss his suspicions that the Crandley Investigation would be used to discriminate against him.  *See* Affidavit of Mary J.C. Garcia at 6, ¶ 12, attached to Plaintiff's Reply to Defendant's Response to His Motion for Partial Summary Judgment ("Plaintiff's Reply"), filed November 3, 2000 *(Doc. 71)*.  Plaintiff also claims that he notified Col. Prewitt that his civil rights were being violated on June 9, 1997.  *See* Pl.'s Memo. in Support at 8, ¶ 14.  In addition, Plaintiff engaged in protected activity a second time when he sought EEO counseling on August 20, 1997.  *See* Exhibit 7 at 2, attached to Pl.'s Memo. in Support.  Thus, the Court finds Plaintiff brought charges of discrimination on two separate occasions--in May and June of 1997 and again in August of 1997.

Plaintiff's removal from the NUMIS-M project occurred in August; Plaintiff's 14-day suspension occurred in November; Defendant's denial of Plaintiff's VSIP application also occurred in November.  All of these adverse employment actions occurred subsequent to Plaintiff's discrimination complaints in May and June of 1997, and two of the adverse actions occurred subsequent to Plaintiff's discrimination complaints in August of 1997.  Thus, the Court

finds that Plaintiff has produced evidence to show that he was subjected to adverse employment actions subsequent to or contemporaneous with the protected activities.

Defendant's final argument with respect to the prima facie case is Plaintiff has failed to establish a causal connection between the protected activities and the adverse employment actions. *See* Df.'s Memo. in Support at 12. "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001) (quotation marks and citation omitted). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.* The Tenth Circuit has previously "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation." *Anderson*, 181 F.3d at 1179 (citations omitted). By contrast, the Tenth Circuit has held that a three-month period, standing alone, is insufficient to establish causation. *See id.*

Plaintiff has established about a two-month period between his bringing charges of discrimination in May and June of 1997 and his removal from the NUMIS-M project in August of 1997. One could argue that the temporal proximity, standing alone, is too remote. However, Plaintiff has adduced additional evidence to establish a retaliatory motive. In July of 1997, Plaintiff requested that he be allowed to attend a NUMIS-M management meeting, and Col. Prewitt denied the request. *See* Df.'s Memo. in Support at 5, ¶ 11. A reasonable factfinder could infer that Col. Prewitt began to show signs of retaliatory conduct when he denied Plaintiff's request to attend the meeting, and this pattern of retaliation eventually resulted in Plaintiff's removal from the NUMIS-M project. Thus, the Court finds that Plaintiff has established the

requisite causal connection between the protected activity and adverse employment action.

Next, Plaintiff must establish a causal connection between his 14-day suspension and his engaging in protected activity. Defendant issued a Notice of Proposed Suspension on August 18, 1997, a couple of weeks after Plaintiff was removed from the NUMIS-M project. A reasonable factfinder could infer that the proposed suspension was a continuation of the retaliatory conduct Plaintiff was experiencing as a result of his bringing discrimination charges in May and June of 1997. Previously, Plaintiff had been removed from the NUMIS-M project and denied an opportunity to attend the NUMIS-M project meeting. This additional evidence lends support to establishing a causal connection between Plaintiff engaging in protected activity and subsequently suffering adverse employment actions.

Finally, Plaintiff must establish a causal connection between the denial of his VSIP application and his engaging in protected activity. Three months elapsed from the time Plaintiff sought EEO counseling in August to the denial of his VSIP application in November. Although this time frame might seem too remote, Plaintiff has provided additional evidence of a retaliatory motive. The RMC decided that adverse personnel actions pending against VSIP applicants must be concluded on or before December 3, 1997. The Wrinkle Investigation was completed by November 3, 1997. Yet, Defendant decided to conduct another "in-depth" investigation into the matter which would not be completed before the December 3 deadline. Thus, a jury might infer that Defendant deliberately decided to conduct another investigation in order to force Plaintiff to miss the December 3 deadline. Defendant fails to explain why the Wrinkle Investigation was insufficient or why another investigation was needed. Accordingly, the Court finds that Plaintiff has presented sufficient evidence to establish his prima facie case of retaliation, and Defendant's

motion is denied.

### 2.     Prima Facie Case of Discrimination

Defendant also moves for partial summary judgment on Plaintiff's race discrimination claims by arguing that Plaintiff has failed to establish a prima facie case. In order to establish a prima facie case of race discrimination, Plaintiff must show (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; and (3) similarly situated employees were treated differently. *See Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998).

First, Defendant argues that partial summary judgment is appropriate because Plaintiff has suffered no adverse employment actions. *See* Df.'s Memo. in Support of Motion at 24. Adverse employment actions cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Here, Defendant argues that the following acts do not constitute adverse employment actions: (1) the initiation of the Crandley, Wrinkle, and Johnson investigations; (2) the manner in which Crandley conducted his July 8, 1997 interview; (3) management's denial of his request to attend a NUMIS-M management meeting in July of 1997; (4) Plaintiff being locked out of his work space; and (5) Prewitt's remark that Plaintiff be prepared to take leave. *See* Df.'s Memo. in Support of Motion at 24. However, Plaintiff is not arguing that these acts, standing alone, were the adverse employment actions. As previously mentioned, the Court finds that Plaintiff alleges the following adverse employment actions: (1) Plaintiff's removal from the NUMIS-M project; (2) Plaintiff's 14-day suspension; and (3) Defendant's denial of Plaintiff's VSIP application. These acts are the

adverse employment actions which give rise to Plaintiff's claims of race discrimination.

Next, Defendant argues that summary judgment is appropriate because Plaintiff has failed to identify similarly situated employees who were treated differently. *See* Df.'s Memo. in Support of Motion at 23. Determining whether employees are similarly situated requires a comparison of relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees. *See Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir. 1997).

Plaintiff's removal from the NUMIS-M project and subsequent 14-day suspension were based on Plaintiff's alleged misrepresentations on time and attendance records. Plaintiff claims that he was treated differently because he was denied the opportunity to amend the time and attendance reports to correct errors. *See* Pl.'s Response at 9. In fact, Defendant admits that it was a routine matter for time and attendance records to be amended to correct errors. *See* Exhibit 11, Responses to Plaintiff's First Requests for Admissions, No. 47, attached to Plaintiff's Motion. Thus, Plaintiff has established disputed issues of fact as to whether he was disciplined more harshly than other employees.

Turning to the denial of Plaintiff's's VSIP application, Plaintiff claims that Gary Rear was also subject to disciplinary actions. Defendant resolved Mr. Rear's disciplinary matters prior to the December 3 deadline, and his VSIP application was approved. In contrast, since the Wrinkle Investigation was completed by November 3, Defendant had an opportunity to complete the pending disciplinary matters against Plaintiff before the deadline. However, Defendant decided to conduct another "in-depth" investigation for some reason, thereby forcing Plaintiff to miss the December 3 deadline. Thus, the Court finds Plaintiff has adduced sufficient evidence to establish

that similarly situated employee, Mr. Rear, was treated differently.

### 3. Legitimate, Nondiscriminatory Reasons

Plaintiff argues that he is entitled to partial summary judgment because Defendant failed to assert legitimate, nondiscriminatory reasons for the adverse employment actions. *See* Memorandum Brief in Support of Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Memo. in Support") at 18, filed September 11, 2000 *(Doc. 61)*. Once a plaintiff has made a prima facie showing of either retaliation or race discrimination, the defendant bears the burden of articulating a facially nondiscriminatory reason for the adverse action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 327 (10th Cir.1996).

Defendant maintains that Plaintiff was removed from the NUMIS-M project, in part, because of the results of the Crandley Investigation which found problems with Plaintiff's time and attendance records. *See* Df.'s Memo. in Support at 6, ¶ 15. Defendant further claims that the Crandley Investigation raised fundamental questions about Plaintiff's honesty, integrity, and ability to determine right from wrong. *See id.* Defendant finally maintains that Plaintiff was removed from the NUMIS-M project because tensions in the workplace were running high, and it was necessary to separate Plaintiff from the other employees. *See id.* at 6-7, ¶ 16. In addition, Defendant claims that Plaintiff was suspended for 14 days because he was paid for overtime hours not worked and incorrectly certified that Mary Garcia worked overtime. *See* Response to Plaintiff's Motion for Summary Judgment ("Df.'s Response") at 6, filed October 2, 2000 *(Doc. 64)*. Finally, Defendant maintains that Plaintiff's VSIP application was denied because an in-depth investigation in retaliatory conduct by Plaintiff would not be completed before the

13

December 3 deadline. *See id.* at 7. Defendant also contends that the application was denied because of the seriousness of the charges; namely, if the charges were sustained, Plaintiff probably would have been terminated. *See id.* Thus, the Court finds that Defendant has met its burden of articulating legitimate, nondiscriminatory reasons for the adverse employment actions, and Plaintiff's motion is denied.

### 4.     Pretext

Defendant also moves for summary judgment on Plaintiff's retaliation and race discrimination claims by arguing that Plaintiff has failed to produce evidence of pretext. *See* Df.'s Memo. in Support of Motion at 15-16 and 24-25. If the employer articulates legitimate, nondiscriminatory reasons for the adverse employment actions, the burden shifts back to the employee to demonstrate a genuine issue of material fact on whether the employer's stated reasons are pretextual or unworthy of belief. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). A plaintiff can "demonstrate pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for [their] action that a reasonable factfinder could rationally find them unworthy of credence." *Pastran v. K- Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir.2000).

The Court finds that Plaintiff has presented sufficient evidence to establish pretext with respect to Defendant's decisions to remove Plaintiff from the NUMIS-M project and subsequently suspend him for 14 days. These adverse employment actions were primarily based on Plaintiff's alleged misconduct with regard to time and attendance records. Plaintiff argues that the discrepancies with regard to time and attendance records are pretextual because Defendant rendered a more severe discipline on him than other employees. The Tenth Circuit has held that

evidence indicating the defendant treated the plaintiff differently from others who were similarly situated is especially relevant to a showing of pretext. *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n. 6, 1198-99 (10th Cir. 2000). In this case, Plaintiff presents Defendant's admission that it was a routine matter for employees to amend their time and attendance records to correct errors. *See* Exhibit 11, Responses to Plaintiff's First Requests for Admissions, No. 47, attached to Plaintiff's Motion. Moreover, Plaintiff presents testimony from Adrian A. Baca, a former employee of Defendant and Employee Relations Specialist/Labor Relations from 1986 to July 1993, where she also contends that it was a routine matter for employees to amend their time and attendance records. *See* Exhibit 3 at 4, attached to Plaintiff's Response. Thus, the Court finds that Plaintiff has demonstrated a genuine issue of material fact on whether the Defendant's stated reasons for removing him from the NUMIS-M project and subsequently suspending him for 14 days are unworthy of belief.

The Court also finds that Plaintiff has presented sufficient evidence to establish pretext with respect to the denial of the VSIP application. Defendant maintains that Plaintiff's VSIP application was denied because an investigation into Plaintiff's retaliatory conduct would not be completed by the December 3, 1997 deadline. *See* Df.'s Memo. in Support of Motion at 15. However, Plaintiff argues that Gary Rear, an Anglo employee, was also subject to disciplinary actions. Defendant completed all matters pertaining to Rear's disciplinary actions prior to the December 3 deadline and his VSIP application was approved. Plaintiff argues that since Defendant controlled the timing and speed of the investigation against Plaintiff, Defendant could have resolved the adverse personnel actions against Plaintiff before the deadline. Thus, a jury could infer that Defendant deliberately delayed the investigation in order to prejudice Plaintiff.

Accordingly, Defendant's motions for partial summary judgment on Plaintiff's retaliation and race discrimination claims are denied.

### B.   Constructive Discharge Claim

Finally, Defendant moves for partial summary judgment on Plaintiff's constructive discharge claim by arguing that Plaintiff voluntarily resigned. *See* Df.'s Memo. in Support of Motion at 15. To prove constructive discharge, a plaintiff must allege sufficient facts to demonstrate under "the totality of the circumstances," *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir.1997) (citation omitted), "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign," *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir.1998) (quoting *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir.1986)), or that the employer, by its discriminatory actions, forced plaintiffs to choose between resignation or termination, *see Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978 (10th Cir.1996).

The Court first notes that all of the disciplinary actions against Plaintiff for misrepresentation on time and attendance records had been resolved at the time Plaintiff resigned on January 3, 1998. Plaintiff had already been removed from the NUMIS-M project in August and served his 14-day suspension in November. The only matter pending was an investigation by Defendant into allegations from Plaintiff's co-workers that he retaliated against them for having provided information to Col. Crandley. Before this matter was resolved, Plaintiff resigned. If an employee resigns of his own free will, the employee will not be held to have been constructively discharged. *See Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir.1998). Thus, the Court finds that Plaintiff voluntarily resigned. Plaintiff could have waited until the investigation was finished

16

and then objected to any findings or conclusions. There was no guarantee that Plaintiff would be terminated. Plus, the facts do not indicate that Plaintiff was asked to resign or threatened with termination. Accordingly, Defendant's motion for partial summary judgment on Plaintiff's constructive discharge claim is granted.

### C. Offensive Estoppel

Without identifying the issues that Defendant should be precluded from litigating, Plaintiff urges the Court to apply the doctrine of offensive estoppel to this case. *See* Pl.'s Memo. in Support at 19. Plaintiff contends that the findings in *Garcia v. Les Aspin and Michael Donley*, No. CIV 92-0036 JB/JHG, should be applied to this case. *See id.*

"Courts generally have broad discretion in using offensive estoppel...." *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 894-95 (10th Cir. 1994). Offensive use of collateral estoppel may be used to permit a plaintiff to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (internal citations omitted). If the components of collateral estoppel are satisfied, the burdens of relitigating identical issues would be afforded to a non-mutual plaintiff provided that the defendant previously had a full and fair opportunity to litigate the issues. *See id.*

The application of collateral estoppel requires: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *See Murdock v. Ute*

*Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir.1992).  The Court finds that Plaintiff has failed to meet the first requirement.  *Garcia* was decided in 1995, based on events occurring in 1991, approximately six years prior to the events giving rise to this lawsuit. *Garcia* dealt with Defendant's execution of administrative EEO program, while this lawsuit deals with specific instances of retaliation and race discrimination.  The issues in *Garcia* are not related to this action.  Accordingly, Plaintiff's motion for partial summary judgment based on offensive estoppel is denied.

## IV.     Conclusion

For the above reasons, the Court finds that Plaintiff has established his prima facie cases of retaliation and race discrimination.  The Court further finds that Defendant has articulated legitimate, nondiscriminatory reasons for the adverse employment actions.  Finally, the Court finds that Plaintiff has presented evidence of pretext with regard to his retaliation and discrimination claims.

In addition, the Court finds that Plaintiff voluntarily resigned, thereby barring his constructive discharge claim.  Finally, the Court finds that Plaintiff's argument for offensive estoppel is without merit because the cases lack an identity of issues.

Wherefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment, filed September 11, 2000 *(Doc. 57)*, is granted in part and denied in part.  Defendant's motions for partial summary judgment on Plaintiff's retaliation and discrimination claims are denied. Defendant's motion for partial summary judgment on Plaintiff's constructive discharge claim is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment, filed September 11, 2000 *(Doc. 60)*, is denied.

DATED May 21, 2001.

                                                                UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Dennis W. Montoya, Esq.
    Albuquerque, New Mexico

Counsel for Defendant:

    Michael H. Hoses, Esq.
    Assistant U.S. Attorney
    Albuquerque, New Mexico